(C.D. 2827)

AMERICAN ELSEVIER PUBLISHING COMPANY, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 23, 1966)

*Waldman & Waldman* (*Seymour M. Waldman, Louis Waldman,* and *Paul R. Waldman* of counsel) for the plaintiff.

*Barefoot Sanders,* Assistant Attorney General (*Bernard J. Babb* and *Andrew P. Vance,* trial attorneys), for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges

NICHOLS, Judge: These protests, consolidated at the trial, involve the proper classification of merchandise entered as "Unbound books printed chiefly in a foreign language—Theatrum Orbis Terrarum—Spieghel der Zeevaerdt." Other merchandise in the entries is not in issue. The collector classified under TSUS item 273.40 at 8½ percent ad valorem as "Printed atlases—printed not over 20 years at the time of importation." The protests claim under item 270.15 "Books printed wholly or chiefly in languages other than English," or, alternatively item 273.35 "Printed over 20 years at time of importation," both being free of duty.

The pertinent provisions of the Tariff Schedules of the United States, which apply to these entries, are as follows:

### General Headnotes and Rules of Interpretation

10.  * * *

(c)   an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

  (i)   a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby;

  (ii)   comparisons are to be made only between provisions of coordinate or equal status, i.e., between the primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading;

*       *       *       *       *       *       *

### SCHEDULE 2.

### Part 5.—Books, Pamphlets, and Other Printed Matter

Part 5 headnotes:

  1.   Except for decalcomanias, labels, flaps, and bands * * *, this part covers only printed matter consisting essentially of textual or pictorial matter produced by any printing process, and similar matter in manuscript or typewritten form. * * *

  2.   * * *

  (b)   the term "*books*" includes books, bound and not bound, * * *;

  3.   For the purposes of determining the classification of printed matter produced in whole or in part by a lithographic process, * * *.

*       *       *       *       *       *       *

270.15   Books printed wholly or chiefly in languages other than English_____ Free

*       *       *       *       *       *       *

Printed maps, globes, atlases, and charts * * *:

*       *       *       *       *       *       *

Other:
273.35   Printed over 20 years at time of importation_ Free
273.40   Printed not over 20 years at time of importation _____ 8.5% ad val.

The "Theatrum Orbis Terrarum" received in evidence as exhibit 1, is a recent reprint, by the photography and offset lithography process, of a volume first printed and published in 1570. The author or compiler was one Abraham Ortelius. The work consists of colored maps portraying the world as then known, and descriptive material in the

Latin language. There was testimony of what would be obvious from inspection, that the maps, though the best that could be done at the time, are not accurate by present concepts. The first edition, in the Leyden Library, was photographed and reproduced by a procedure described in the record but unnecessary to set out here in detail. Suffice it that the import is not a new example of the printer's or engraver's art, but simply a strikingly handsome mechanical reproduction of the work originally accomplished in 1570.

The other work in this litigation, exhibit 2, "Spieghel der Zeevaerdt," is a similar recent reproduction of a volume first published in 1584. The author or compiler was one Lucas Janszoon Waghenaer. The work consists of colored mariner's charts of the seas of Northern and Western Europe, complete with compass roses, scales of miles, soundings, shoals, and profiles of coasts and headlands; needless to say, frequently inaccurate according to modern concepts, and not suitable for navigating a vessel today. The text is all in the Dutch language and includes, besides descriptive material for each chart, an extended introduction telling the mariner of 1584 how to navigate his vessel at sea. The method of reproduction was the same as for exhibit 1.

Plaintiff says that exhibits 1 and 2 are covered by the free entry provision of item 270.15, *supra*, as books printed wholly or chiefly in a language other than English, not as atlases under item 273.40. It is worth mentioning that under the former paragraph 1410 of the Tariff Act of 1930 and paragraph 1310 of the 1922 Act, maps embodied with text in atlases were held dutiable as books of foreign authorship rather than as maps. *Rt. Rev. Msgr. William Quinn, Director for Propagation of the Faith* v. *United States*, 64 Treas. Dec. 806, Abstract 24817; *Charles E. Lauriat Co.* v. *United States*, 56 Treas. Dec. 832, Abstract 9778. The Tariff Commission, possibly deeming this an anomaly, introduced atlases *eo nomine* into items 273.25–273.40. Undoubtedly the merchandise here involved, even if atlases, is also enumerated in item 270.15 as printed in a language other than English. However, the mandate of General Headnote 10(c) is that, if an article is described in two or more items, it falls under the provision that more specifically describes it. The term "atlas" appears to us to describe this merchandise more specifically, especially in light of its being a newly added term to enumerate a class of article not previously mentioned, and heretofore dealt with in more comprehensive designations. Clearly an atlas is a kind of book that includes but few, relatively, of all the books that are published.

Next, plaintiff says the books are not atlases. This, however, is a new semantic discovery so far as plaintiff is concerned. The English language brochures describing the imports, published by plaintiff,

exhibits 3 and 4, repeatedly call the merchandise atlases. Exhibit 3 at page 25 says:

The unique position held by Ortelius's THEATRUM in the history of cartography, is to be attributed primarily to its qualification as "the World's first Atlas."

Exhibit 4 at page 42 calls the Spieghel der Zeevaerdt a "sea-atlas." At page 68, referring to the disadvantages of buying nautical charts in book form because charts are so frequently corrected, it says:

* * * It was disadvantageous to buy a complete new atlas when only a few charts had been corrected.

A tariff enumeration traditionally includes "all forms" of the article. *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464. There are exceptions but none that applies here.

Plaintiff apparently conceives of "atlas" as a sort of use classification, meaning a volume chiefly used as of the date of importation by persons to find their way around or to locate geographical objects. Thus, though once atlases, the articles at bar would have ceased to be so, for no one would use them so today. Their appeal, we may suppose, is partly aesthetic, for many people admire the artistry of old maps and charts, and partly historic, to illustrate the spread of geographic knowledge and the development of the art of navigation. However, per the dictionary, an atlas is just—"a collection of maps in a volume" (Webster's New International, 2d ed., 1953). The argument, though ingenious, is really too subtle for interpretation of a law written for men of commerce. If an "atlas" ceases to fall under that category when no longer resorted to for current geographical information, it would seem the "maps" and "charts" of the same tariff item would so cease likewise. This would leave the items for "charts * * * printed over 20 years at time of importation" an absurdity with nothing to apply to, for no mariner in his right mind would use a chart over 20 years old for navigation. We do not believe the Tariff Commission intended its words to be so limited.

Parenthetically, the parties make no point of the fact that the Waghenaer volume is a collection of charts, not maps. In nautical circles it is a frightful blunder to call a chart a map. However, per the dictionary, a chart is a "hydrographic or marine map" (Webster's op. cit., *supra*), so the Waghenaer volume might be considered "a collection of maps in a volume" and, therefore, an "atlas." In modern times, atlases of charts are not common because of the need for constant correction, but apparently such a collection would, if it existed, be an atlas.

In framing the foregoing comments, we have considered the testimony of the witnesses. One, called by plaintiff, testified that an

atlas, to be such, had to be contemporaneously serviceable. One, called by defendant, denied this. Both did their best to help the court, but we do not find that either one had any previous experience with a situation where the involved distinction made any difference, and the opinions they expressed, therefore, did not have enough factual basis to be of value to us.

Plaintiff next says that the imports are duty free because printed over 20 years ago. It says or said the essential operations to constitute a job of printing were performed in the 16th century, while those recently performed, photography and offset lithography, are not printing. The latter part of the argument plaintiff apparently abandons or at least does not urge in its briefs, and clearly there is nothing to it. The headnote definition of printing, quoted, *supra*, connotes that all forms of printing are covered unless expressly excluded. Some items in schedule 2, part 5, differentiate between lithographic and other printing: items 273.90, 273.95, 274.10, and 274.20. In items where this is not done, the intent is to cover lithographic and other printing without distinction. See and compare the interpretation of the former schedules in *United States* v. *Canadian National Railways*, 29 CCPA 272, 275, 278, C.A.D. 202. Therefore, the issue before us is whether an atlas is printed over 20 years at the time of importation if within 2 years the foreign producer by photography and offset lithography, constituting "printing," has copied an ancient atlas produced by printing and engraving in the 16th century.

We note that the duty free provisions, for books, item 270.20, and maps, etc., item 273.35, which have been printed over 20 years at the time of importation, repeat, except for addition of atlases, paragraph 1629 of the free list under the 1930 Act. Nevertheless, we have not found and counsel have not cited any interpretation of either the old or the new provisions which throws light on the instant controversy. We are left to determine for ourselves what was the intent of the Congress in enacting the 1930 Act, reasoning that, in adopting the older provisions, the Tariff Commission intended to adopt for itself the congressional intent of 1930, whatever it was.

The free list provisions of the 1930 Act reflect an effort to pick a statutory way along a clear but narrow path, affording reasonable protection of the domestic printing and publishing industries without needlessly obstructing the entry of cultural and educational materials. The 20-year clause fits in with other provisions allowing free entry of the private libraries of persons entering the country from abroad (paragraph 1632), imports by educational, religious, philosophical, etc., institutions for their own use and not for sale (paragraph 1631), books and pamphlets in languages other than English (paragraph 1630), books, etc., for the United States or the Library of Congress (paragraph 1628).

Items were not placed on the free list of the 1930 Act with a careless and undiscriminating hand. Protection was to be the rule, free trade the occasional calculated exception. Thus unenumerated items could be added by similtude only to the dutiable schedules, not the free list—paragraph 1559.

The common rationale of all the free entry provisions for books, etc., is that they encourage the flow of cultural materials without offering loopholes for printers and publishers abroad to produce wholesale for the American market. The 20-year clause as defendant construes it, is in accord because no one could afford to print a book, map, or chart for the American market and hold it 20 years before export. There might be occasional instances of 20-year warehousing for lack of buyers, but for the most part books, etc., coming in under that clause would be used or secondhand. They would dribble onto the market as collections or libraries were disposed of. There is doubtless a steady demand for old and out of print books: there is no stigma to owning a secondhand book as there might be to wearing a secondhand suit, but the amount of competition this affords to printers and publishers of new books, though presumably substantial, has its own inherent limits.

But if anyone, under the 20-year clause, could import duty free a new facsimile reproduction of a book printed over 20 years before—and this seems the implication of plaintiff's position—a loophole in the wall would open whose economic consequences could be of an entirely different order. Assuming that the statutory language is ambiguous and permits this interpretation, it flies in the face of the whole congressional scheme if we understand it correctly. We simply do not believe that the Congress or the Tariff Commission intended it. Since the legislative intent must be our guiding star, our duty is clear. We hold that in case of an ancient printed atlas reproduced by photography and offset lithography, the date of reproduction is the date for application of the 20-year clause of items 273.35 and 273.40.

As this opinion is being prepared we note the enactment of Public Law 89–651 implementing the Florence Agreement sponsored by UNESCO to facilitate the free flow of educational, cultural, and scientific materials between countries, and dealing with, among other things, atlases. Doubtless the law as stated herein will soon be obsolete, but awareness of this does not exonerate us from applying it until it is superseded.

For the reasons stated, the protests are overruled. Judgment will be rendered accordingly.